IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BLAKE EDWARD HUMPHERS,　　　　　　　　No. 2:17-cv-01178-HZ

　　　　　Plaintiff,　　　　　　　　　　　　　　OPINION & ORDER

　　v.

COLLETTE PETERS, MICHAEL GOWER,
JUDY GILMORE, JASON BELL,
JONATHAN LO, MIKE MCELROY,
DARRELL SAXTON, ROBERT JONES,
ALBERT NASBY, JIM MOORE, WENDY
BLEVINS & DAVID PLATT,

　　　　　Defendants.

Blake Edward Humphers
Snake River Correctional Institution
777 Stanton Blvd.
Ontario, OR 97914

　　Pro Se Plaintiff

Ellen Rosenblum
Attorney General
Michael R. Washington
Senior Assistant Attorney General
OREGON DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR 97301

　　Attorneys for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Blake Edward Humphers brings this action under 42 U.S.C. § 1983 against Defendants Collette Peters, Michael Gower, Judy Gilmore, Jason Bell, Jonathan Lo, Mike McElroy, Darrell Saxton, Robert Jones, Albert Nasby, Jim Moore, Wendy Blevins, and David Platt. Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment stemming from Defendants' failure to decontaminate him after exposure to OC spray. Plaintiff and Defendants now move for summary judgment. For the reasons below, the Court denies Plaintiff's motion and grants in part and denies in part Defendants' motion.

## BACKGROUND

Plaintiff entered the custody of the Oregon Department of Corrections ("ODOC") on March 21, 2013, and has been housed at Snake River Correctional Institution ("SRCI") since November 25, 2015. Curtis Decl. ¶ 3, Attach. 1, ECF 42. At the time of the events at issue in this case, Defendants Nasby, Saxton, Jones, Platt, Moore, Blevins, and McElroy were all correctional officers employed at SRCI. Am. Compl. 2–3, ECF 20. Defendant Lo was a correctional sergeant in charge of supervising the special housing unit at SRCI. *Id.* at 3. Defendants Bell and Gilmore were assistant superintendents at SRCI, and Defendant Cain was the superintendent of SCRI. *Id.* Defendant Gower and Peters were, respectively, the assistant director of operations and director of ODOC. *Id.* at 4.

On July 26, 2016, at approximately 12:30 PM, a fight involving Plaintiff and 34 other inmates occurred in a dining room at SRCI. Curtis Decl. ¶ 4, Attach. 2; First Humphers Decl. Ex. 1 at 1, ECF 25. To try to stop the fight, officers used Oleoresin Capsicum ("OC" or "pepper") spray against Plaintiff and the other inmates. Curtis Decl. Attach. 3; First Humphers Decl. Ex. 1 at 2. Plaintiff alleges in his Amended Verified Civil Complaint that the spray was "all over

Plaintiff's head, face, in eyes, nose, ears, mouth and all over Plaintiff's hands and arms." Am. Compl. 4, ECF 20.

Once the officers gained control over the fight, Plaintiff and others were escorted to the Disciplinary Segregation Unit ("DSU") for processing. Curtis Decl. ¶ 4, Attach. 2; First Humphers Decl. Ex. 1 at 2. Plaintiff was handcuffed to a wall while being evaluated and processed into the DSU. First Humphers Decl. Ex. 1 at 2. While handcuffed, Plaintiff alleges that he was "suffering horrific burning and was complaining of pain to staff." Am. Compl. 4. Plaintiff alleges that "unknown CO's pretty much laughed, stating 'yeah that spray is horrible and very hot.'" *Id.* They are also alleged to have assured Plaintiff he would get a shower soon. *Id.* He was given a damp towel and instructions to hold the towel against his eyes to relieve the burning. *Id.*; First Humphers Decl. Ex. 1 at 4. Plaintiff claims that this made it worse. Am. Compl. 5. At the time of the incident, it was SRCI's procedure to provide inmates who had been sprayed or contaminated by OC spray with a damp towel to hold against their eyes along with a clean cell and clean clothing. First Humphers Decl. Ex. 1 at 4; *Id.* at Ex. 2 at 3.

While Plaintiff was being processed into the DSU, Plaintiff was examined by a registered nurse. DiGiulio Decl. ¶ 5, ECF 41. In Plaintiff's medical records, the nurse noted: "Plaintiff denies injury but has several superficial scratches to face. Lower lip split inside. Patient denies any loose teeth. No active bleeding." *Id.* at ¶ 5, Attach. 1 at 3. Plaintiff alleges that he told the nurse that he was "burning alive from the spray" and that his hand was broken. Am. Compl. 5. He further alleges that the nurse told him he would get a shower later and that she would schedule an appointment regarding his hand. *Id.* Plaintiff was also observed for 30 minutes by officers, who did not indicate that Plaintiff was having any medical issues as a result of the OC spray. DiGiulio Decl. ¶ 6.

Plaintiff was provided clean clothing upon entering DSU. First Humphers Decl. Ex 1 at 3. He requested a shower from the CO who was transporting him and was told "we're busy, you'll get one later and as soon as possible." Am. Compl. 5. He was then placed in a cell with a sink in unit B of the DSU ("DSB") and immediately tried to wash his face and eyes. *Id.* Plaintiff alleges that the water pressure from the sink was poor. *Id.* He tried to cup the water and splash it onto his face but doing so spread the water into his eyes and made matters worse. *Id.*

Plaintiff alleges that he complained to Defendant McElroy about the burning and asked for a shower, new clothes, and a towel. *Id.* His request was denied. *Id.* At this point, Plaintiff says he was "suffering the most horrific burning of his life" and "it felt like [his] eyeballs were melting and . . . plaintiff had lava on his face and head." *Id.* He asserts that the OC spray was reactivating all night long, preventing him from sleeping. *Id.* at 5–6. At times, he "felt like his brain was cooking." *Id.* at 6.

The next day, on July 27, 2016, Plaintiff was moved to a cell in unit C of the DSU ("DSC"). First Humphers Decl. Ex. 1 at 4. He complained to Defendants Nasby and Saxton that he was "burning alive and had yet to get a shower." Am. Compl. 6. Plaintiff alleges that he was told it was not his day and he would get one the following day. *Id.* When he continued to complain, Defendant Nasby responded that "the spray sucks man." *Id.* Plaintiff asked to speak to a sergeant several times but was told they were busy. *Id.* No sergeant spoke to Plaintiff. *Id.* That day, showers were conducted for cells on the opposite side of DSC. First Humphers Decl. Ex. 1 at 4–5.

Plaintiff also asked Defendants Moore, Platt, and Blevins—the swing shift officers on July 27—for a shower, clean clothes, towels, and bedding. Am Compl. 6. He was denied. *Id.* He was told that he would get a shower and new clothes the following day and new bedding in a few

days along with everyone else. *Id.* Plaintiff alleges that he suffered another night of constant burning. *Id.* at 6–7. His eyes also stuck shut such that they would "tear up" when he opened them and reactivate the spray. *Id.* at 7. Plaintiff alleges that the spray was in his open wounds, which caused them to hurt more. *Id.*

The next morning, Defendants Nasby, Jones, and Saxton began giving showers to the top tier on his side of DSC. *Id.* Plaintiff was on the bottom tier. *Id.* Plaintiff alleges that he told Defendants "I've been burning alive for 2 days now can I get a shower?" *Id.* One of the COs told him that he had "to wait until swing shift gets here in the afternoon." *Id.* When the swing shift officers arrived at 3:00 PM, Plaintiff was finally given a shower fifty hours after being sprayed. *Id.* Plaintiff alleges that the shower reactivated the spray and Plaintiff "burned all over again for a few hours." *Id.* Plaintiff was also provided new clothes. First Humphers Decl. Ex. 1 at 5. Defendants assert that they were unable to provide Plaintiff with a shower and deviate from the set shower schedule because of the influx of 35 inmates into the DSU after the July 26, 2016 incident and the restrictions used in DSU, such as two-person escorts. First Humphers Decl. Ex. 1 at 8.

On August 7, 2016, Plaintiff filed a grievance alleging that his constitutional rights and DOC policy were violated when he was denied a shower. First Humphers Decl. Ex. 6. Lt. Jantz responded by the end of the month and found that the decontamination complied with SRCI's current training and standards. First Humphers Decl. Ex. 7. He also noted: "During a major disruption of the institution services may be limited or suspended based on institutional needs. You were afforded the opportunity to clean up in accordance with rule and policy." *Id.* Plaintiff appealed this response a week later. First Humphers Decl. Ex. 8. A month after that, Defendant Gilmore responded echoing the earlier response from Lt. Jantz. First Humphers Decl. Ex. 9. She

further indicated that Plaintiff received a shower "at the institution's earliest convenience" and that a rule for mandatory showers after contamination "would be effective as long as the institution has not been placed on any modified operations." *Id.* Defendant filed a second appeal on October 17, 2016. First Humphers Decl. Ex. 10. In a response dated October 27, 2016, Mark Nooth, East Institutions Administrator, concurred with Defendant Gilmore. First Humphers Decl. Ex. 11.

On July 28, 2017, Plaintiff filed this action under 42 U.S.C. § 1983 claiming that Defendants violated the Eighth Amendment in denying Plaintiff a reasonable opportunity to be decontaminated from a chemical agent. Compl, ECF 2; Am. Compl. 11. Separately, Plaintiff also alleges that Defendants Peters, Gower, Cain, Gilmore, Bell, and Lo are liable in a supervisory capacity for failing "to adequately train and/or supervise her correctional public officials" to avoid the alleged Eighth Amendment violations. Am. Compl. 12–15. Plaintiff seeks a declaratory judgment, injunctive relief, and damages, including compensatory damages in the amount of $25,000 against each Defendant and punitive damages in the amount of $75,000 against each Defendant. Am. Compl. 15–16.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Plaintiff alleges that in failing to decontaminate him for fifty hours after exposure to OC spray Defendants violated the Eighth Amendment. Plaintiff brings his claim under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Plaintiff and Defendants now both move for summary judgment. Plaintiff moves for summary judgment on the merits of his claims against Defendants McElroy, Blevins, Moore, Platt, Saxton, Jones, and Nasby, arguing that the undisputed facts establish that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they denied him the opportunity to shower for fifty hours after he was exposed to OC spray.[1] Pl. Mot. Summ. J 1, ECF 24. Defendants move for partial summary judgment and ask the Court to dismiss Defendants Blevins, Bell, Gower, Gilmore, Saxton, Peters, Lo, and Jones because they were not personally involved in the alleged constitutional deprivations at issue here and cannot be liable in a supervisory capacity. Def. Mot. Partial Summ. J., ECF 40.

Because a reasonable jury could conclude that Defendants were not deliberately indifferent to Plaintiff's serious medical need, the Court denies Plaintiff's motion. The Court, however, grants in part and denies in part Defendants' motion. There is a dispute of fact as to whether Defendant Jones was involved in the underlying constitutional deprivation, but Plaintiff has presented no evidence or argument to suggest that Defendants Bell, Gower, Gilmore, Peters,

---

[1] In his motion, Plaintiff also moves for summary judgment against "Defendants Shoemaker [and] Godek," but neither individual is a Defendant in this case. *See* Pl. Mot. Summ. J. 1.

Lo, Saxton, and Blevins were personally involved in the alleged constitutional violation. Accordingly, Defendants Bell, Gower, Gilmore, Peters, Lo, Saxton, and Blevins are dismissed from this case.

I.   **Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment as to Defendants McElroy, Blevins, Moore, Platt, Saxton, Jones, and Nasby on the merits of his Eighth Amendment claims. A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain . . . . " *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal citations omitted).

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1133, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d and 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than

"mere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

In *Clement v. Gomez*, bystander inmates were exposed to pepper spray vapors when pepper spray was administered in a neighboring cell to stop a violent fight. 298 F.3d at 902. Prison officials did not provide the bystander inmates with decontamination showers until four hours after the incident. *Id.* The defendants moved for summary judgment on the plaintiffs' Eighth Amendment claims, arguing that they were not deliberately indifferent to the bystander inmates' serious medical needs. *Id.* at 901. The Ninth Circuit first found that the plaintiffs' submissions—which documented the painful effects of pepper spray—satisfied the objective component of the Eighth Amendment test by demonstrating the presence of a serious medical need. *Id.* at 904. The court then found that the plaintiffs might be able to show that the defendants were subjectively aware of the risk of serious injury and therefore deliberately indifferent in denying the plaintiffs showers and medical attention during the four-hour period. *Id.* at 905. The court emphasized that the officers themselves were coughing and stepped outside for fresh air, and that the prisoners alleged that they made repeated requests for attention; were coughing, gaging, or choking; and complained of breathing problems, pain, and asthma attacks. *Id.* at 905. The court therefore concluded the defendants were not entitled to summary judgment on the plaintiff's Eighth Amendment claim.

Similarly, here, the effects of the pepper spray may qualify as a "serious medical need." *See Clement*, 298 F.3d at 904. Based on the record, however, a reasonable juror could find that Defendants lacked the requisite mental state. First, Defendants took various precautions after Plaintiff was sprayed with OC spray in compliance with administrative regulations. Plaintiff was

provided a damp towel for his eyes. First Humphers Decl. Ex. 1 at 4. Plaintiff was examined by a nurse and observed for 30 minutes by officers following exposure. DiGiulio Decl. ¶¶ 5–6. Upon admission to DSU, he was given clean clothing and a clean cell with access to water. First Humphers Decl. Ex. 1 at 3; Am. Compl. 5. Such actions were consistent with Department of Corrections regulations, which provide "[t]hose affected by a chemical agent shall be permitted to wash their face, eyes, and other exposed skin areas, as soon as possible after the chemical agent has been used." OAR 291-013-0104(5)(f). These regulations further specify that inmates exposed to a chemical agent shall be provided with clean clothing, an examination by a health care official, observation in the half hour following application of the chemical agent, and "a shower as soon as time and circumstance allows." *Id.* at (h)–(k). Though not definitive, Defendants' precautionary measures and compliance with administrative regulations suggest that they lacked the requisite state of mind. *See Jones v. Gomez*, No. C 04-3034 SI(PR), 2005 WL 3001866, at *4–6 (N.D. Cal. Nov. 8, 2005) ("Although prison officials cannot avoid liability in every case by blindly following a prison's policy because the policy itself may be infirm, following the policy here suggests a reasonable choice to deal with pepper spray.").

Second, the record reflects that Defendants faced competing concerns throughout the time Plaintiff requested a decontamination shower. *See Clement*, 298 F.3d at 905 n.4 ("These competing tensions—the prisoners' need for medical attention and the government's need to maintain order and discipline—may be important to the resolution of whether the officials had the requisite subjective intent."); *see also Peralta*, 744 F.3d 1076, 1082 (9th Cir. 2014) ("[T]he Court *has* told us that prison officials aren't deliberately indifferent to a prisoner's medical needs unless they act wantonly, and whether an official's conduct "can be characterized as 'wanton' depends upon the constraints facing [him].") Specifically, Defendants assert that they were

unable to deviate from the set shower schedule in DSU because of the influx of the 35 inmates involved in the underlying incident and restrictions in DSU. First Humphers Decl. Ex. 1 at 8. Defendant Gilmore indicated that Plaintiff received a shower "at the institution's earliest convenience." First Humphers Decl. Ex. 9. In short, while Defendants may have been on notice that Plaintiff was suffering from the effects of the pepper spray, *see* Am. Compl. at 6–7, a reasonable jury could find that Defendants did not act with deliberate indifference in denying Plaintiff a shower. Summary judgment is therefore inappropriate in this case.

## II. Defendants' Partial Motion for Summary Judgment

Defendants also move for summary judgment as to the claims against Defendants Blevins, Bell, Gower, Gilmore, Saxton, Peters, Lo, and Jones, arguing these Defendants should be dismissed from this case because Plaintiff has not demonstrated that they were personally involved in the alleged constitutional deprivation.[2] Def. Mot. Summ. J. 3–4. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Thus, "there is no respondeat superior liability under § 1983. Rather, a government official may be held liable only for the official's own conduct." *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1097 (9th Cir. 2013). "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298,

---

[2] Defendants make additional arguments in support of their motion for summary judgment, including Eleventh Amendment immunity and qualified immunity. But because Plaintiff has failed to show that Defendants Blevins, Bell, Gower, Gilmore, Saxton, Peters, and Lo were personally involved in the alleged constitutional deprivation, the Court declines to reach the remainder of Defendants' arguments.

303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Thus, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

First, with regard to Defendants Peters, Cain, Gower, Gilmore, Bell, and Lo (the "Supervisory Defendants"), the Court grants Defendants' motion for summary judgment. In his Amended Complaint, Plaintiff alleges that the Supervisory Defendants are liable because they knew officers were violating inmates' constitutional rights and failed to discipline or adequately train and supervise officers with the proper policies, procedures, and administrative rules. Am. Compl. 12–15. Plaintiff, however, fails to cite any evidence in support of these allegations, and the Court finds none.[3] Rather, as described above, the evidence suggests that the officers

---

[3] Indeed, Plaintiff fails to address Defendants' arguments as to any of the Supervisory Defendants in his response to Defendants' Motion for Summary Judgment and, instead, repeats

followed prison policies and administrative rules following Plaintiff's exposure to OC spray. *See supra* Section I.

Nor is there any other evidence of either personal involvement in the underlying allegations or a causal connection between the Supervisory Defendants' conduct and the constitutional violations. Except for one lawsuit for the use of OC spray involving an inmate at SRCI that was ongoing at the time of the incident, First Humphers Decl. Ex. 2 at 5, there is no evidence that the Supervisory Defendants were on notice of the type of constitutional violations alleged here and acquiesced to those violations, *cf. Starr*, 652 F.3d at 1216 (where the county sheriff received reports of inmate deaths and injuries related to ongoing culpable actions by his subordinates and failed to take corrective action to protect inmates, the plaintiff had plausibly alleged that the sheriff had acquiesced to the unconstitutional conduct of his subordinates and was therefore deliberately indifferent to the danger posed to the plaintiff). There is no evidence that the Supervisory Defendants were aware of the failure of prison officials to provide Plaintiff with a shower. Plaintiff has not alleged that Defendants implemented a constitutionally repugnant policy. Plaintiff's conclusory allegations, alone, cannot survive summary judgment. *See Roberts v. Gonzalez*, , No. CV 12-2044-JVS DTB, 2013 WL 4663882, at *9 (C.D. Cal. Mar. 5, 2013), *report and recommendation adopted*, No. CV 12-2044-JVS DTB, 2013 WL 4663551 (C.D. Cal. Aug. 29, 2013) (dismissing the plaintiff's § 1983 claim when the plaintiff's complaint was based on "conclusory and generalized allegations without any specific facts regarding [the defendant]s responsibility for training and supervising subordinates, any specific policy at issue, or any specific factual allegations that they had notice of any prior injuries to bystander inmates

---

the arguments he makes in his own motion for summary judgment on the merits of his Eighth Amendment claims.

resulting from the discharge of pepper spray"). Accordingly, the Court finds it appropriate to dismiss Defendants Peters, Cain, Gower, Gilmore, Bell, and Lo.

Second, as to Defendants Blevins, Saxton, and Jones, however, the Court finds that summary judgment is appropriate only as to Defendants Blevins and Saxton. Plaintiff alleges that he asked Defendant Blevins for a shower, clothes, towels, and new bedding on July 27, 2016. Am. Compl. at 6. He also alleges that he asked Defendant Saxton for a shower on July 27 and 28. Am Compl. 6–7. Plaintiff argues that because these Defendants were working on those units in DSU, they are "personally involved" in the violation of his Eighth Amendment rights. *See* Second Humphers Decl. Ex 13, ECF 47 (noting that Defendant Blevins and Saxton were working in DSC on July 27 and 28, 2016). But Defendants have provided undisputed evidence that neither Defendant Blevins nor Defendant Saxton were working as floor staff on DSC or DSB on July 27 and 28, 2016. Defendant Blevins was assigned to do paperwork for the 35 inmates involved in the fighting incident on July 26, 2016. Blevins Decl. ¶ 5. Accordingly, she asserts that did not come into contact with Plaintiff during the relevant 50-hour period. *Id.* Similarly, Defendant Saxton was assigned to the Control Unit for DSC during the relevant period. Curtis Decl. ¶ 5. Based on his position in the Control Center—which involves opening and closing the doors of the unit, watching staff and inmate movements around the unit, and keeping records for the unit—he would not have interacted with Plaintiff. *Id.* at ¶ 6. Thus, contrary to Plaintiff's argument, the evidence shows that neither Defendant was personally involved in the alleged constitutional deprivation. Both Defendant Blevins and Defendant Saxton are dismissed from this case.

By comparison, there is an issue of fact over whether Defendant Jones was personally involved in the alleged Eighth Amendment violation. Unlike Defendants Blevins and Saxton,

Defendant Jones was working as floor staff in DSC on July 28. Jones Decl. ¶ 6. Though Defendant Jones does not recall "having much interaction with [Plaintiff]" or Plaintiff asking Defendant Jones for a shower, *id.*, Plaintiff contends that on July 28, 2016, he asked Defendant Jones if he could shower because he had been "burning alive" from the OC spray, Am. Compl. at 7. Accordingly, the Court denies Defendants' motion to dismiss Defendant Jones from this case.

## CONCLUSION

The Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS in part and DENIES in part Defendants' Motion for Partial Summary Judgment [40]. Defendants Peters, Cain, Gower, Gilmore, Bell, Lo, Saxton, and Blevins are dismissed from this case.

IT IS SO ORDERED.

Dated this \_\_29\_\_ day of \_\_August\_\_, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge